IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CATHY L. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL ACTION NO. 9:16-2805-BHH-BM<br><br><br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) in December 2010,[1] alleging disability beginning June 24, 2010,[2] due to diabetes, high blood pressure, glaucoma, gastrointestinal

---

[1] Plaintiff also filed an application for supplemental security income (SSI), but was found ineligible for SSI benefits due to her spouse's earnings. (R.pp. 111-116). That application is not at issue herein.

[2] Plaintiff previously filed an application for DIB that was denied on June 23, 2010. (R.pp. 71-78). Therefore, that Plaintiff was not disabled through June 23, 2010 is established for purposes of her current application. See Lively v. Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987)[Principles of res judicata apply in social security disability cases]; cf. Osgar v. Barnhardt, No. 02–2552, 2014 WL 3751471 at * 3 (D.S.C. May 29, 2004) ["The reopening of an application for benefits is left to the discretion of the Commissioner and a refusal to do so is not capable of review by the federal courts."].



reflux disease (GERD), and high cholesterol. (R.pp. 18, 213, 259). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 7, 2012. (R.pp. 50-67). The ALJ thereafter denied Plaintiff's claim in a decision issued November 30, 2012. (R.pp. 94-101). However, the Appeals Council vacated the ALJ's November 2012 decision and remanded the matter back to the ALJ for further consideration; (R.pp. 106-109); following which a second hearing before the ALJ was held on November 5, 2014. (R.pp. 33-49). The ALJ thereafter again denied Plaintiff's claim in a decision dated January 23, 2015. (R.pp. 17-25). This time the Appeals Council denied Plaintiff's request for a review of the ALJ's January 2015 decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 7-10).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be remanded to the Commissioner for an award of benefits, or alternatively for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence



to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### **Medical Records**

Plaintiff's medical records show that on June 8, 2009, prior to when Plaintiff alleges her medical condition became disabling, she was treated at Advanced Medical Associates for uncontrolled diabetes, hypertension, and hyperlipidemia. (R.p. 332). She was assessed with hypertension, diabetes, hyperlipidemia, and glaucoma, and musculoskeletal pain in her legs by Advanced Medical Associates on August 3, 2009. (R.p. 331). Returning to Advanced Medical Associates on October 5, 2009, Plaintiff complained of right leg pain that worsened with walking, and she was assessed with arthritis and plantar fasciitis. (R.p. 329). Plaintiff thereafter received regular care during 2010 at Advanced Medical Associates for diabetes, parathesias of her left foot,



pain and swelling in her left knee, right foot pain, hypertension, arthritis, and edema. (R.pp. 319-327).

On October 30, 2009, Plaintiff received a followup examination for glaucoma at the Vision Centers with Dr. Gary A. Bodofsky, an optometrist. Plaintiff's corrected distance vision was tested at 20/40 right and 20/70 left, and her corrected near vision was 20/40. It was noted that she saw no improvement as to her glaucoma with Lumigan, so she was to go back to taking Travatan-Z, and Azopt was also prescribed. (R.p. 335). On February 19, 2010, Dr. Bodofsky noted that Plaintiff's corrected distance vision was 20/50+ right and 20/70 left, and her near vision was 20/50+. (R.p. 337). On May 28, 2010, Plaintiff complained to Dr. Bodofsky about blurry near vision, itching eyes, and poor night vision. Her corrected distance vision was 20/30 right, 20/70- left, and 20/30 with both eyes, and her corrected near vision (with an increase in prescription strength) was J1@16.[3] (R.pp. 338-340). On August 27, 2010 (which was now after Plaintiff alleges her medical condition had become disabiling), Dr. Bodofsky recorded that Plaintiff's corrected distance vision was 20/50 right and 20/70 left, and her corrected near vision was 20/50. Plaintiff was instructed on the proper use and importance of consistent use of medications, and Azopt and Travatan were prescribed. (R.pp. 341-342).

During 2011, Plaintiff received treatment at Advanced Medical Associates for musculoskeletal pain, diabetes, hypertension, hyperlipidemia, and GERD. (R.pp. 318, 344, 346, 403). On April 27, 2011, Dr. Regina A. Roman performed a consultative examination. Plaintiff was noted

---

[3]The Jaeger scale instead of the Snellen scale is sometimes used to rate near visual acuity. J1 equates to 20/25 on the Snellen scale. J3 equates to 20/40, and J5 to 20/50. See J. Schwiegerling, Field Guide to Visual and Ophthalmic Optics, SPIE, https://spie.org/publications/fg04_p19-20_visual_acuity?SSO=1 (last visited Sept. 27, 2017).

4



to have a past medical history of GERD, bilateral knee pain, hypertension, glaucoma, diabetes, hyperlipidemia, and bilateral carpal tunnel syndrome, and Dr. Roman's examination revealed that Plaintiff was not able to squat due to knee pain; she had limited motion of her lumbar spine and in knee flexion; and she was not able to heel, toe, or tandem walk due to knee pain. X-rays revealed underlying degenerative changes. Plaintiff also had bilateral cataracts, and her visual acuity was 20/40 right, 20/70 left, and 20/50 bilaterally with correction. (R.pp. 350-355).

On May 2, 2011, state agency physician Dr. Isabella McCall reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; and stand, walk, and sit for about six hours in an eight hour day. Dr. McCall further opined that Plaintiff was limited to frequent bilateral pushing and pulling with her lower extremities; that she could occasionally climb ramps and stairs, kneel, crouch, and crawl; should never climb ladders, ropes, and scaffolds; could frequently balance and stoop; and should avoid concentrated exposure to hazards such as machinery and heights. (R.pp. 360-363).

On May 31, 2011, Dr. Bodofsky discussed the need for cataract surgery with Plaintiff, but she said she could not afford to have surgery and had no insurance. Plaintiff's corrected distance vision was 20/40 right, 20/63 left, and 20/40 with both eyes, and her corrected near vision was J3@16. Dr. Bodofsky told Plaintiff that she could no longer drive at night with her current correction, and that surgery was necessary to improve her visual acuity. (R.pp. 382-384).

During 2012, Plaintiff continued to be treated at Advanced Medical Associates for gout, hypertension, hyperlipidemia, diabetes, GERD, and vision problems. (R.pp. 399-402). On March 15, 2012, Dr. Bodofsky noted that Plaintiff's corrected vision was distance 20/60 right, 20/100 left, and 20/60 near. On July 6, 2012, Plaintiff complained to Dr. Bodofsky about blurry near vision,



and her corrected distance vision was 20/40 right, 20/50 left, and her corrected near vision was J3@16. (R.p. 389). Dr. Bodofsky wrote:

> Discussed the need for cat[aract] surgery. [Plaintiff] said she cannot afford to have it done and has no ins[urance] to help. Told [Plaintiff] this year that we had very little choice as she cannot see well enough to pass DMV and if she waits too much longer there will be a greater risk of surgical complications. Also told [Plaintiff] that changing [prescription] would be of little value in improving [visual acuity].

(R.p. 391).

On October 12, 2012, Plaintiff's vision with correction was distance 20/60 right and 20/125 left, and near 20/60. She reported that she was waiting to hear from the Lions Club about getting assistance with cataract surgery. (R.p. 392).

## **Discussion**

Plaintiff, who was fifty-four years old at the time she was last insured for DIB benefits,[4] has a limited education and past relevant work experience as a machine operator. (R.pp. 25, 213, 260, 268-269). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe"

---

[4]Plaintiff was last insured for DIB on December 31, 2012. (R.p. 19). Therefore, in order to be eligible for DIB, Plaintiff must show that she was disabled on or before that date. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005); see 42 U.S.C. § 423(c); 20 C.F.R. § 404.101.



impairments[5] of osteoarthritis and diabetes mellitus (R.p. 20), she nevertheless retained the residual functional capacity (RFC) through her date last insured to perform light work[6] limited to only frequently pushing/pulling with her bilateral lower extremities; frequently balancing and stooping; never climbing ladders, ropes, or scaffolds; and occasionally climbing ramps and stairs, kneeling, crouching, and crawling (R.p. 22). At step four, the ALJ found that Plaintiff could perform her past relevant work as a machine operator with these limitations, and was therefore not disabled and not entitled to DIB during the period at issue. (R.p. 25).

Plaintiff asserts that in reaching this decision, the ALJ failed to adequately explain his findings regarding her RFC as required by SSR 96-8p, and in particular failed to properly consider her limited vision (including failing to find that she had a severe visual impairment); that he failed to properly evaluate her ability to return to her past relevant work; failed to properly assess the opinion evidence; and failed to properly consider the prior decision from June 2010 pursuant to Acquiescence Ruling 00-1(4) as directed by the Appeals Council. After careful review and consideration of the arguments presented, and for the reasons set forth hereinbelow, the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error by failing to consider all of the opinions of Plaintiff's treating optometrist and by failing to properly consider the evidence

---

[5] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



7

relating to Plaintiff's near vision impairment and its effect on Plaintiff's ability to perform her past relevant work.

A treating physician's opinion[7] is ordinarily entitled to great weight, see Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996)[Noting importance of treating physician opinion]; is entitled to deference, and must be weighed using all of the factors provided for in 20 C.F.R. § 404.1527. See SSR 96-2p. Under these regulations, a treating source's opinion on the nature and severity of an impairment is entitled to "controlling weight" where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Further, the ALJ is required to provide an explanation in the decision for what weight is given a treating source's opinion and, if rejected, why it was rejected. See 20 C.F.R. § 404.1527(c)(2).[8]

In his decision, the ALJ gave significant weight to Dr. Bodofsky's May 2011 opinion that Plaintiff was restricted from driving at night due to her need for cataract surgery, but found that

---

[7]The treating physician rule applies to acceptable medical sources; SSR 06–03P, 2006 WL 2329939, at *2; and under the regulations, "acceptable medical sources" include, for purposes of establishing certain impairments, licensed optometrists. See 20 C.F.R. § 404.1502 [defining a "treating source" as a "physician, psychologist, or other acceptable medical source ..."]; 20 C.F.R. § 404.1513(a)[listing "acceptable medical sources" to include: licensed physicians, licensed or certified psychologists, licensed optometrists, licenses podiatrists, and qualified speech-language pathologists]. Therefore, Dr. Bodofsky's records and opinions qualify as being from a treating source.

[8]The undersigned notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. However, the claim in the present case was filed before March 27, 2017, and Plaintiff's claim has therefore been analyzed pursuant to the treating physician rule set out above.

8



this limitation would have very little effect on Plaintiff's RFC. (R.p. 24). However, despite specifically finding that Dr. Bodofsky's May 2011 opinion was entitled to significant weight due to the treating relationship between Dr. Bodofsky and Plaintiff, the ALJ then failed to discuss Dr. Bodofsky's July 2012 opinion, where he told the Plaintiff that she had very little choice but to have cataract surgery because "she cannot see well enough to pass DMV." The ALJ provides no discussion of this opinion, whether he gave it significant weight (or any weight at all), or whether he may have even possibly rejected it. See 20 C.F.R. §§ 404.1527(c)(2).

Further, it does not appear from a plain reading of the ALJ's decision that he properly considered Plaintiff's near vision impairment. At step two, the ALJ found that Plaintiff's vision impairment was non-severe. (R.p. 20). An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). In making this finding, the ALJ stated that:

> the claimant suffered from glaucoma with decreased visual acuity. Despite this condition, the claimant's best corrected distance visual acuity was 20/60 in the right eye, 20/125 in the left eye, and 20/60 in both eyes in October 2012.

(R.p. 20). However, the ALJ did not discuss Plaintiff's near vision impairment, including Dr. Bodofsky's numerous notations indicating that Plaintiff's corrected near vision was reduced, even though when asked at the November 2014 hearing if she could still do the job of a seamstress, Plaintiff replied: "No, I can't even see to thread the needles and the holes in the machine. I can't even see to do that." (R.p. 42). Plaintiff also testified "Yes. Yeah. That's true" in response to the question "You're not able to handle the visual aspect of looking at something that close?" (R.p. 42).



9

"[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Here, Plaintiff's past relevant work was as a sewing machine operator, but there is no discussion or analysis of Dr. Bodofsky's records or opinions detailing Plaintiff's near vision problems, whether he rejected these findings, or what effect this condition (if Dr. Bodofsky's findings and opinion were accepted) would have on Plaintiff's ability to perform her past relevant work. Cf. Rouse v. Commisioner, No. 13-1904, 2014 WL 4792058 at * 2 (D.S.C. Sept. 21, 2014)[finding that ALJ failed to comply with SSR 96-2p's requirement of specificity with regard to the weight given to the treating source's medical opinion and court could not determine if substantial evidence supported it where although the ALJ discussed the opinion evidence, he failed to assign any weight to it].

A step two error may be harmless where the ALJ finds other severe impairments (which the ALJ did in this case) and considers all of Plaintiff's impairments at later steps. See, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Washington v. Astrue, 698 F.Supp.2d 562 (D.S.C. 2010). However, although the ALJ did state at step three that he had considered Plaintiff's impairments in combination, including her glaucoma with decreased visual acuity, in determining that Plaintiff did not meet or equal one of the listings of impairments[9] (R.p. 21), the ALJ did not fully consider or address

---

[9]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to meet a listing, a claimant's impairment must "meet *all* of the specified medical criteria." Id. (emphasis in original).

10



Plaintiff's vision impairment in evaluating her subjective complaints or in determining her RFC. Rather, he only conclusorily stated that, while the combination of Plaintiff's impairments (both severe and non-severe) imposed some limitations on the level of work Plaintiff could perform, her treatment records failed to demonstrate that her ability to perform the RFC set forth in the decision was compromised by the combination of her impairments. No mention is made of any limitations in Plaintiff's near vision, and the ALJ's failure to specifically address Plaintiff's near vision problems is particularly significant given that he determined at step four that she could perform her past relevant work, which was as a sewing machine operator.

Moreover, while the ALJ noted Plaintiff's testimony at the hearing that she could not perform her past relevant work as a seamstress due to her vision impairment, in finding that Plaintiff was still capable of performing this work the ALJ only discussed Dr. Bodofsky's findings with respect to Plaintiff's distance vision: he did not discuss any of Dr. Bodofsky's examination notations that her corrected near vision was reduced, even though that is the limitation which would most effect her ability to perform her past work. (R.pp. 22, 24). Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of failure to provide explanation or reason for rejecting or not addressing relevant probative evidence].

The Commissioner argues that the ALJ was not required to include any vision-related limitation in his RFC because Dr. Bodofsky did not instruct Plaintiff to avoid any activities and because the ALJ found that Plaintiff's vision impairment was not severe. However, as noted above, since the ALJ does not discuss any near vision findings in his decision, and did not address Dr. Bodofsky's July 2012 statement that Plaintiff's vision had become so poor that she could not pass a

11



DMV test, the undersigned cannot find that the ALJ properly considered Dr. Bodofsky's findings.[10] Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician]. Although Dr. Bodofsky did not make any specific statements concerning any limitation on Plaintiff's ability to perform work due to her reduced near vision, it must be noted that Plaintiff had not worked since 2007 (at which time she worked as a salad preparer), and had not worked in a sewing position for approximately twelve years.[11]

Additionally, the ALJ's failure to consider Dr. Bodofsky's July 2012 comment that Plaintiff had very little choice but to have cataract surgery because "she cannot see well enough to pass DMV" may affect the ALJ's consideration of Plaintiff's subjective complaints. The ALJ

---

[10] The Commissioner argues that the American Optometric Association and World Health Organization consider 20/60 acuity to be "near normal vision", and that the DMV allows a person to drive if an eye professional completes a form certifying that vision is at least 20/70 in one eye. See Commissioner's Brief at 9-10. However, these arguments are only post hoc rationalization for upholding the decision, since that is not what the ALJ discussed or found in his decision. See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990) ["Implicit" rejection of treating physician's opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons" for rejecting a treating physician's opinion]; see also Ellis v. Astrue, No. 07–3996, 2009 WL 578539, at * 8 (D.S.C. Mar. 5, 2009) [Rejecting post hoc rationale for ALJ's decision]. While the ALJ may have in fact believed that Plaintiff's near vision problems were not enough to effect her job performance, given the near vision requirements of her past job; see discussion, supra, it was incumbent on him to make that specific finding and explain how the evidence relating to Plaintiff's near vision limitations did or did not effect her ability to do that job. As noted, however, he never addressed this issue. Nester v. Astrue, No. 08–2045, 2009 WL 349701, at * 2 (E.D. Feb. 12, 2009) [Noting that the Court "may not consider post hoc rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

[11] Even so, Plaintiff's machine operator work, which was performed approximately ten years prior to Plaintiff's alleged onset date, qualified as past relevant work, which is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); see also 20 C.F.R. § 404.1574 (discussing substantial gainful activity).



12

discounted, in part, Plaintiff's testimony alleging total inability to work because Plaintiff "testified that her doctor restricted her from driving"[12] while the ALJ believed that her "treatment notes showed that she was only restricted from nighttime driving." (R.p. 24). However, in light of Dr. Bodofsky's July 2012 statement (which, again, was not discussed by the ALJ), it is unclear whether the ALJ's decision to discount Plaintiff's subjective statements is supported by substantial evidence. Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

Finally, as the ALJ did not properly consider or discuss Plaintiff's near vision limitation, the under signed is unable to find that the ALJ's determination that Plaintiff could perform her past relevant work is supported by substantial evidence. For the occupation of Lining Maker, Lockstitch,[13] the Dictionary of Occupational Titles (DOT),[14] requires "Near Acuity: Constantly - Exists 2/3 or more of the time." DOT No. 786.682-162, 1991 WL 681046. As noted above, the ALJ discussed Plaintiff's corrected distance visual acuity in October 2012 at step two of the decision, but

---

[12] Plaintiff testified that "the doctor said he couldn't even see inside [her eye], so he knows that I couldn't see outside of it." (R.p. 59).

[13] In the prior June 2010 decision, the only past relevant work identified for Plaintiff was salad maker (which at the time was Plaintiff's most recent relevant work - from 2000 to 2007 - see R.p. 311), which it was determined she was unable to perform. (R.p. 76). In the November 2012 ALJ decision, Plaintiff's past relevant work was identified as an armhole-sew-and-trim operator, DOT No. 786.682-022. (R.p. 101; see also R.pp. 290-291 (Vocational Analysis dated July 13, 2011)). However, in the 2015 decision, Plaintiff's past relevant work was identified as Lining Maker, Lock Stitch (machine operator). (R.p. 25). Plaintiff described her past work for a sewing manufacturer from 1990 to 2000 as setting sleeves on t-shirts. (R.pp. 268-269).

[14] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998)[emphasis added].

13



there is no discussion of her reduced corrected near vision. Further, although Dr. Bodofsky noted on numerous occasions that Plaintiff's near vision was reduced even with correction, Plaintiff complained to Dr. Bodofsky about blurry near vision, and Plaintiff testified that she could not perform her past relevant work because of problems seeing to thread a needle, the ALJ did not discuss any of Dr. Bodofsky's findings concerning Plaintiff's near vision, and there is therefore no way to know whether he properly considered whether Plaintiff could perform the visual acuity requirements of her past relevant work with this impairment. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision].

Therefore, the decision should be reversed and remanded for consideration of all of the evidence and opinions of Dr. Bodofsky and to fully consider Plaintiff's vision impairments in light of all of the evidence. With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 3, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).